UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARRIET G.[1] ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FRANK BISIGNANO, ) <br> Acting Commissioner of Social Security,[2] ) <br> ) <br> Defendant. ) <br> ) | Case No. 1:23-cv-04476 <br><br> Honorable Beth W. Jantz |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Harriet G.'s application for a period of disability and disability insurance benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's Brief in Support of Reversal and Remand (Dkt. 16) is GRANTED and the Commissioner's Motion for Summary Judgment (Dkt. 19) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**I.   Background**

On January 20, 2021, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 30, 2020. R.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano has been substituted for his predecessor.

14, 392-93. Plaintiff's claim was denied initially and upon reconsideration. R. 14, 312-21. A hearing was held before an Administrative Law Judge ("ALJ") on July 13, 2022.[3] R. 14, 250-80. The ALJ denied Plaintiff's claim on August 29, 2022. R. 14–25. The Appeals Council denied Plaintiff's request for review on May 9, 2023, R. 1-7, making the ALJ's decision the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ's opinion followed the five-step analytical process required by 20 C.F.R. § 404.1520. R. 15-25. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since December 30, 2020, her alleged onset date. R. 17. At step two, the ALJ found that Plaintiff had severe physical impairments in the form of "status post two hip replacements" and "osteoarthritis of the hips." *Id.* Additionally, the ALJ found that Plaintiff's alleged osteoporosis, as well as her medically determinable mental impairments of depression and anxiety, were non-severe. *Id.* The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of one of the Social Security Administration's listings of impairments. R. 19-20. Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she was further limited to: never climbing ladders, ropes, or scaffolds or working on uneven surfaces; avoiding concentrated exposure to unprotected heights; occasionally kneeling, crouching, or crawling; and needing a cane for ambulation. R. 20. At step four, the ALJ found that Plaintiff could perform her past relevant work as an office manager. R. 24. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act

---

[3] The hearing was held telephonically due to the COVID-19 pandemic. R. 14, 252.

at any time from her December 30, 2020 alleged disability onset date through the ALJ's August 29, 2022 decision. R. 24-25.

## II. Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

## III. Discussion

Plaintiff argues that the ALJ committed reversible error by: (1) failing to accommodate her mental limitations in the RFC; (2) inadequately evaluating her limitations in sitting; and (3) improperly assessing her subjective symptom statements and discounting her daughter's third-party function report. After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ erred by failing to evaluate Plaintiff's mental limitations in assessing her

3

RFC. Because this failure alone warrants remand, the Court need not reach Plaintiff's additional arguments.

Plaintiff first argues that the ALJ erred by failing to account for her mental limitations in crafting the RFC. Dkt. 16 at 4-8. More specifically, Plaintiff contends that the ALJ erred by not factoring into her RFC assessment the mild limitation she found that Plaintiff had in concentration, persistence, or pace ("CPP") and ultimately not accommodating that limitation in the RFC. *Id.* While the ALJ was not necessarily required to account for such a limitation in the RFC, the Court agrees with Plaintiff that the ALJ erred by *neither* incorporating this limitation into the RFC, *nor*, in the alternative, at least explaining why it produced no functional restrictions that needed to be included in the RFC. This error requires remand.

The ALJ's sole discussion of Plaintiff's mental limitations came at step two, where the ALJ concluded that Plaintiff's depression and anxiety were non-severe medically determinable impairments that nonetheless caused a mild limitation in CPP. R. 17-19.[4] In so doing, the ALJ evaluated the opinions of psychological consultative examiner Jennifer Cilino-Folks, Psy.D., and state agency psychological consultant Lionel Hudspeth, Psy.D. R. 18-19, 293, 1064-67. During a November 24, 2021 psychological consultative examination, Dr. Cilino-Folks found that Plaintiff's mood was "dysthymic" with congruent affect, "[p]sychomotor agitation was mildly present," and "[h]er speech was pressured and quiet," but she was able to maintain concentration and "[h]er thought processes were goal directed and thought content was to task." R. 17-18, 1066. Plaintiff could, among other things, repeat numbers, spell a word forwards and backwards, and do math problems. R. 18, 1066. Dr. Cilino-Folks concluded that Plaintiff could manage her funds and

---

[4] The ALJ determined that Plaintiff had no limitations in any of the other "paragraph B" areas of mental functioning. R. 18-19.

opined that it was "likely she would have little difficulty responding appropriately to supervision, coworkers, or work pressures in a work setting." R. 18-19, 1066. The ALJ found the latter to be consistent with the record and, therefore, "mostly persuasive," but she also found it "somewhat vague." R. 19.

On December 13, 2021, agency consultant Dr. Hudspeth opined at the reconsideration level that Plaintiff had no severe mental impairments but was mildly limited in CPP. R. 292-93.[5] The ALJ found Dr. Hudspeth's opinion persuasive, since it was "consistent with the record, including the general lack of repeated complaints by the claimant showing significant difficulties with functioning, mental status exams showing deficits, and treatment notes showing anything other than conservative treatment." R. 19. In determining that Plaintiff had mild limitations in CPP, the ALJ also considered Plaintiff's statements regarding her daily activities in her function report, such as her ability to prepare meals for herself, do household chores, and pay bills, which the ALJ found "suggest[ed] being able to concentrate, persist, or maintain pace." R. 18. The ALJ also noted Plaintiff's hearing testimony that she did activities like crossword puzzles and reading. R. 19, 265.

At the end of the ALJ's step two discussion of Plaintiff's mental impairments, the ALJ expressly noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

---

[5] Plaintiff's mental impairments were not assessed at the initial level. R. 284.

R. 19. Notwithstanding the ALJ's statement that her step two discussion was "not a residual functional capacity assessment," the ALJ did not revisit Plaintiff's mental limitations at any point after step two.

In sum, the ALJ determined that Plaintiff had a mild limitation in CPP yet, ultimately, neither accounted for this limitation by including any mental restrictions in the RFC, nor explained why she did not do so. It is axiomatic that "both the hypothetical posed to the [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is true even if mental impairments "are non-severe and the limitations that they impose on the claimant's capabilities are minor." *Thomas G. v. Kijakazi*, No. 20-CV-5860, 2022 WL 4234967, at *4 (N.D. Ill. Sept. 14, 2022) (collecting cases). Time and time again, courts in this District have remanded ALJ opinions identifying non-severe mental impairments causing mild limitations at step two that disappear from the ALJ's analysis when it comes time to craft the RFC, and the ALJ fails to explain why they warrant no restrictions within the RFC. *See, e.g.*, *Robin L.T. v. Bisignano*, No. 23-cv-50213, 2025 WL 2830171, at *3 (N.D. Ill. Oct. 6, 2025); *Gladis B. v. Bisignano*, No. 24-cv-8130, 2025 WL 2712188, at *2-3 (N.D. Ill. Sept. 23, 2025); *Rita S. v. Dudek*, No. 24 C 5157, 2025 WL 1141179, at *5 (N.D. Ill. Apr. 16, 2025); *Dianne T. v. Dudek*, No. 22 CV 2411, 2025 WL 832968, at *7 (N.D. Ill. Mar. 17, 2025); *Kathy A. v. Kijakazi*, No. 20-CV-2387, 2022 WL 2758001, at *3-5 (N.D. Ill. July 14, 2022); *Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334, at *3-4 (N.D. Ill. Apr. 8, 2022); *Judy D. v. Saul*, No. 17 C 8994, 2019 WL 3805592, at *3-5 (N.D. Ill. Aug. 13, 2019). The ALJ here did what these cases indicate is impermissible: the ALJ determined at step two that Plaintiff had non-severe mental impairments causing a mild mental limitation, but the ALJ did not discuss or even mention this limitation in assessing the RFC.

The arguments the Commissioner offers to stave off remand are unavailing. First, the Commissioner contends that Plaintiff has failed to identify any opinion or other evidence demonstrating that she has functional restrictions from her mental impairments that should have been incorporated into the RFC. Dkt. 20 at 4-7. But this argument misses the point. The ALJ herself found that Plaintiff had a mild CPP limitation at step two. While the ALJ was not necessarily required to account for such a limitation in the RFC, she was required to *explain* why she apparently concluded that this limitation did not require any corresponding restrictions in the RFC. *See Alonzo S. v. O'Malley*, 757 F. Supp. 3d 822, 827 (N.D. Ill. 2024) ("The problem here is that the ALJ did not explain why he concluded, if he indeed did so conclude, that Claimant's mild limitation in concentration, persistence, and pace did not affect his work functionality such that the ALJ did not need to include any corresponding restrictions in the RFC."). The Commissioner correctly notes that, within her step two analysis, the ALJ stated that Plaintiff's "medically determinable impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." R. 17; Dkt. 20 at 5. But the Court will not assume that such a finding necessarily equates to no functional restrictions stemming from Plaintiff's mild limitations in CPP. *See Judy D.*, 2019 WL 3805592, at *5 (rejecting the Commissioner's argument that claimant failed to identify specific restrictions the ALJ should have included in the RFC or what evidence demonstrated she required mental restrictions, as the ALJ "expressly found that [claimant] suffered a mild limitation in CPP [and] was required to discuss how or why this limitation factored (or did not factor) into his RFC assessment"); *Dianne T.*, 2025 WL 832968, at *7 ("The government responds that the ALJ is not required to include functional restrictions based on a paragraph B

7

criteria rating alone and that the medical evidence supports no such RFC limitation here. Maybe not, but the ALJ must explain why, and he failed to do so.") (internal citation omitted).

Nor is the Court persuaded by the Commissioner's argument that the ALJ's step two analysis of Plaintiff's mental limitations was sufficiently clear such that no further discussion was needed for the RFC. Dkt. 20 at 7-8. As explained above, the ALJ expressly stated that her step two analysis was "not a residual functional capacity assessment" and indicated that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." R. 19. It is true that ALJ opinions must be read holistically, and the failure to repeat an analysis from step two or three when crafting the RFC before step four is typically not a proper basis for remand. *See Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) ("[T]he sequential process is not so rigidly compartmentalized, and nothing in the *Chenery* doctrine prohibits a reviewing court from reading an ALJ's decision holistically."). But where the ALJ has expressly noted that her step two analysis did not constitute an RFC assessment, and that an RFC assessment required a more detailed analysis, "the Court will not overreach and ignore the ALJ's own words in an effort to read the opinion as a whole." *Anthony W.*, 2022 WL 1062334, at *3; *see also David K. v. Kijakazi*, No. 20-CV-1743, 2022 WL 2757695, at *5 (N.D. Ill. July 14, 2022) (same). The ALJ was obligated to explain either how the RFC "incorporate[d] restrictions caused by Claimant's mild mental limitations," or, alternatively, why "the ALJ believed that the mild limitations did not merit a non-exertional limitation in the RFC." *Viviana R. v. Kijakazi*, No. 19-CV-07419, 2022 WL 3354840, at *5 (N.D. Ill. Aug. 12, 2022). The ALJ's opinion contains no such explanation.[6]

---

[6] The ALJ's step-two analysis does include the conclusory, apparently boilerplate statement that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." R. 19. Courts have rejected

Indeed, "[e]ven if a mild limitation finding at step two does not necessarily equate to any RFC limitation, the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC." *Kathy A.*, 2022 WL 2758001, at *4 (cleaned up); *see also Alonzo S.*, 757 F. Supp. 3d at 827 (ALJ was required to "explain why he concluded, if he indeed did so include, that Claimant's mild limitation in concentration, persistence, and pace did not affect his work functionality such that the ALJ did not need to include any corresponding restrictions in the RFC"). It is the ALJ's failure to conduct such an evaluation—and not the ALJ's failure to find any functional limitations—that requires remand.[7]

This type of error is particularly problematic when, as here, the ALJ finds that a plaintiff can perform past skilled work. R. 24. *See, e.g.*, *Brenda R. v. Kijakazi*, No. 20-cv-7498, 2023 WL 3689458, at *6 (N.D. Ill. May 26, 2023) (ALJ's failure to make any mention in his RFC assessment of his own finding that claimant had mild limitations in CPP (among other areas) or "sufficiently explain why he did not include any such limitations" was "particularly troubling" since "the determination of non-disability was based on the ALJ's finding at step four that Claimant had the

---

this language as insufficient to properly account for mild mental limitations without a more thorough discussion when crafting the RFC, finding the language confusing or ambiguous. *See Mark M. v. Kijakazi*, No. 20 C 05063, 2022 WL 17960687, at *4-5 (N.D. Ill. Dec. 27, 2022) (explaining that the ALJ "could have intended this to mean that the RFC was designed to incorporate the mild impairments identified at Step 2, even though they were not specifically mentioned in the RFC [or she] could also have meant that [she] considered the Step 2 limitations as part of the RFC analysis but found them to be too mild to warrant additional non-exertional restrictions") (citation omitted).

[7] The Commissioner also argues that the ALJ's decision should be affirmed because, after promising a more detailed assessment of Plaintiff's mental RFC, "the ALJ went on to explain that she agreed with the state agency psychological consultant that plaintiff did not have work-related mental restrictions." Dkt. 20 at 8; R. 19. While it is true that Dr. Hudspeth found Plaintiff's mental impairments to be non-severe, he (like the ALJ) found that she suffered from mild limitations in CPP. R. 19, 292-93. Dr. Hudspeth did not state that Plaintiff had *no* concrete functional restrictions arising from her mild mental limitations; he simply noted that Plaintiff had mild CPP limitations. R. 293. That Dr. Hudspeth did not translate those mild limitations into concrete restrictions does not mean that he opined that there were in fact no such restrictions, nor did the ALJ make any such express findings.

9

ability to perform her past skilled work as department manager"); *Anthony W.*, 2022 WL 1062334, at *4 ("The ALJ's error in the present case is particularly problematic because the [vocational expert] found that Anthony could perform his previous work as an automobile salesperson and a household appliance salesperson; jobs that The Dictionary of Occupational Titles ('DOT') lists as skilled and semi-skilled employment."); *Esther H. v. Saul*, 18 CV 50052, 2019 WL 5634219, at *2-3 (N.D. Ill. Oct. 31, 2019) (remand necessary for the ALJ to properly assess claimant's mild mental limitations and her ability to perform her past skilled work as a dispatcher in light of those limitations).

In concluding that this issue requires remand, the Court is not, as the Commissioner suggests (Dkt. 20 at 4), reweighing the evidence. The Court has not determined that Plaintiff has any functional limitations associated with the mild CPP limitation the ALJ found. Rather, the Court holds only that remand is required given the lack of explanation as to the ALJ's apparent conclusion that the CPP limitation did not require any restrictions in the RFC (and would not prevent Plaintiff from performing her past skilled work as an office manager). *Judy D.*, 2019 WL 3805592, at *5 ("It may be that, on remand, the ALJ will conclude that this limitation did not result in [claimant] having non-exertional or mental restrictions during the Relevant Period or that [claimant] could have performed other work even with any resulting restrictions. But our task is not to reevaluate the facts or reweigh the evidence to determine whether [claimant] is or is not disabled."); *McCulley v. Berryhill*, No. 13 C 6031, 2019 WL 1292982, at *6 (N.D. Ill. Mar. 20, 2019) ("Although [claimant's] mild limitation may not have required accommodation, as the Commissioner argues, the ALJ was at least required to explain why that is the case. Even if the ALJ here ultimately discounted [claimant's] mild limitation or found it did not prevent her from working, because he provided no discussion whatsoever of [claimant's] mild limitation in relation

to her ability to return to her past relevant work, the Court cannot determine whether that was, in fact, the case."). Because remand is required on this basis, the Court need not address Plaintiff's remaining arguments. The Administration should not, however, construe the Court's silence on the remaining issues as an indication that the ALJ's initial adjudication was appropriate or not with respect to those issues.

### IV. Conclusion

For the foregoing reasons, Plaintiff's Brief in Support of Reversal and Remand (Dkt. 16) is GRANTED and the Commissioner's Motion for Summary Judgment (Dkt. 19) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

DATED: December 4, 2025

HON. BETH W. JANTZ
U.S. Magistrate Judge